UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PAINTERS JOINT COMMITTEE, et al.,<br><br>             Plaintiffs,<br><br>v.<br><br>J.L. WALLCO, INC. Dba Wallternatives, et al.,<br><br>             Defendants. | 2:10-CV-1385 JCM (PAL) |

**ORDER**

Presently before the court is a summary judgment motion filed by defendants Shrader & Martinez Construction, Inc. ("SMC") and Merchants Bonding Co. ("MBC"). (Doc. # 385). Plaintiffs Painters Joint Committee, *et al.* have filed a response (doc. # 391), to which defendants replied (doc. # 393). The Las Vegas Chapter of the Associated General Contractors has filed an *amicus curiae* brief in support of defendants' motion (doc. # 390), to which plaintiffs responded (doc. # 392).

The court notes at the outset that plaintiffs' disjointed filing procedure and litigation strategy (for example, initially naming over 100 defendants in this action, only to later dismiss many of them one by one as plaintiffs' investigations revealed that these defendants had not committed any wrongs)[1] has resulted in a cluttered docket and unnecessary delay in this court's adjudication of the

---

[1] Plaintiffs have already been warned by the court (doc. #249 at 2 n.1) that their "scattershot approach to pleading" could potentially contravene Fed. R. Civ. P. 11, which requires that all factual representations in pleadings "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

**James C. Mahan**
**U.S. District Judge**

instant motions. Plaintiffs have explained that "there are literally thousand [*sic*] and thousands of documents in this case . . . with all of [this] information, there is bound to be small oversights in filing." (Doc. #144 at 2). While the court sympathizes with the difficulty in prosecuting complex actions, it reminds the parties that it expects the same degree of professional conduct from all litigants in cases both large and small.

**I.   Background**

Plaintiffs have filed suit against over 100 different entities alleging, *inter alia*, violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002 *et seq*. and liability pursuant to NRS 608.150 and NRS 624.273. Plaintiffs are multi-employer trust funds that receive contributions pursuant to a collective bargaining agreement ("CBA") between employers and the International Union of Painters and Allied Trades District Council # 15, Local Union # 159 ("painters union"). (Doc. # 361).

J.L. Wallco, Inc. d/b/a Wallternatives ("JLW") was a signatory of a CBA ("master agreement") with the painters union. (*See* doc. # 385 at 123-25). As such, JLW was obligated to pay contributions to the trusts for every hour worked by any employee who performed labor covered by the master agreement. (*See* doc. # 385 at 102-03). Plaintiffs allege that Genuine Quality Coatings, Inc. ("GQC") is an alter-ego of JLW and that, as such, GQC is bound by the same obligations pursuant to the master agreement. (Doc. # 361).

SMC is a general contractor with MBC as its bonding company. Between December 2009 and June 2011, SMC contracted with GQC and/or Richard Rejan Nieto ("Nieto Jr.") d/b/a GQC for painting work on various construction projects. (Doc. # 385).

In their fourth cause of action, plaintiffs allege a claim against SMC for contractor liability pursuant to NRS 608.150. Plaintiffs seek contribution payments allegedly owed to them for any work performed for SMC by employees of GQC, Nieto Jr., or any alter egos of JLW pursuant to the master agreement. (Doc. # 361).

Plaintiffs' fifth cause of action alleges a claim against MBC pursuant to NRS 624.273. Plaintiffs allege that MBC's proceeds are payable to them in satisfaction or partial satisfaction of the

1  delinquency related to SMC. (Doc. # 361).

2  In the instant motion, defendants SMC and MBC seek summary judgment, arguing that applying NRS 608.150 to alter-ego cases is contrary to this provision's legislative purpose and unconstitutional. (Doc. # 385). Defendants therefore assert that even if the alter-ego doctrine applies in this matter, they still cannot be held liable under NRS 608.150. Therefore, for the purposes of this order, the court will assume, without ruling, that GQC was an alter-ego of JLW. The court will address each of defendants' contentions in turn.

## II.  Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

**James C. Mahan**
**U.S. District Judge**

- 3 -

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.    Discussion**

    *A.    NRS 608.150 and alter-egos*

NRS 608.150(1) states:

> Every original contractor making or taking any contract in this State for the erection, construction, alteration or repair of any building or structure, or other work, shall assume and is liable for the indebtedness for labor incurred by any subcontractor or any contractors acting under, by or for the original contractor in performing any labor, construction or other work included in the subject of the original contract, for labor, and for the requirements imposed by chapters 616A to 617, inclusive, of NRS.

. . .

      NRS 608.150 "imposes liability against all general contractors for the labor-related debts of their subcontractors." *United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Can., AFL-CIO v. Grove Inc.*, 105 F. Supp. 2d 1129, 1131–32 (D. Nev. 2000). It is well established that "employee benefit trust contributions constitute indebtedness for labor." *Carpenters Sw. Admin. Corp. v. Thomas & Assoc. Mfg.*, 799 F. Supp. 2d 1166, 1169–70 (D. Nev. 2010) (internal quotations and citations omitted); *see also Tobler & Oliver Const. Co. v. Bd. of Trs. of Health & Ins. Fund for Carpenters Local Union No. 971*, 442 P.2d 904, 907 (Nev. 1968). This provision "essentially turns general contractors into sureties. As a surety, Nevada law treats [the contractor] as the original obligor and thus allows the obligee to seek recovery from both [the contractor] and the subcontractors." *Lopez v. Pete King Nev. Corp.*, No. 2:06-CV-1200-RCJ-LRL, 2007 WL 2669769, at *3 (D. Nev. Sept. 4, 2007) (holding that NRS 608.150 does not require a plaintiff to prove that a subcontractor is liable prior to seeking liability against a general contractor).

      This court has previously held that a general contractor, who is a non-signatory to a CBA, is liable under NRS 608.150 for its signatory subcontractor's unpaid fringe benefit contributions. *See, e.g.*, *Trs. of Operating Eng'rs Pension Trust v. Thorton Concrete Pumping, Inc.*, 806 F. Supp. 2d 1135, 1141 (D. Nev. 2011); *Bd. of Trs. v. Road & Highway Builders, LLC*, No. 2:11-CV-1579-JCM-VCF, 2012 WL 5867215, at *6 (D. Nev. Nov. 19, 2012). The present case differs from *Thorton Concrete*, in that GQC, defendant SMC's subcontractor was not a signatory, but an alleged alter-ego of JLW, who was a signatory. (*See* doc. # 385 at 122-24).

      The alter-ego doctrine in labor law is "designed to prevent employers from escaping their collective bargaining obligations by shifting work to non-union firms they also own." *UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Can., AFL-CIO v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1475 (9th Cir 1994). If a non-union employer is found to be an alter-ego of a signatory employer, it is obligated to pay all debts that it would have incurred if it had signed the CBA. *Resilient Floor Covering Pension Fund v. M & M Installation, Inc.*, 630 F.3d 848, 854 (9th Cir. 2010).

. . .

**James C. Mahan**
**U.S. District Judge**

1    Thus, assuming that GQC was an alter-ego of JLW, GQC would be bound by the master agreement and obligated to pay the contributions owed in accordance with ERISA. *See, e.g.*, *New England Mech. Inc. v. Laborers Local Union 294*, 909 F.2d 1339, 1349 (9th Cir. 1990). As SMC is a general contractor within the meaning of NRS 608.150, it follows that SMC would be liable for the contributions owed by GQC.

A similar question arose in *Trustees of Cement Masons & Plasters Health & Welfare Trust v. Fabel Concrete, Inc.*, 159 F. Supp. 2d 1249 (D. Nev. 2001), wherein the court addressed an analogous alter-ego scenario under NRS 624.273(1). In that case, the court held that a surety was liable to union trust funds for the contribution payments incurred by its insured, which was an alter-ego of a union signatory. *Id.* at 1253. The court found that even if the defendant-surety was not aware of its insured's alter-ego status upon issuing the bond, the defendant-surety consented to pay any future liabilities incurred by its insured. *Id.*; *see also Trs. of Constr. Indus. & Laborers Health & Welfare Trust v. Hartford Fire Ins. Co.*, 578 F.3d 1126, 1129 (9th Cir. 2009) (holding that a general contractor should have been aware that it would be liable for the labor-indebtedness of its subcontractor based on NRS 608.150 and *Tobler & Oliver Constr. Co.*, 442 P.2d at 907).

B.    *Legislative purpose*

Defendants argue that holding a general contractor liable under NRS 608.150 in alter-ego scenarios is contrary to the provision's legislative purpose because the labor-related debt arises after the work has already been performed. Defendants contend that this forces contractors to compensate employees for what they have not earned.

In response, plaintiffs argue that all indebtedness for labor arises when the labor is actually performed. The court agrees. "A subcontractor incurs its indebtedness for labor when that labor is performed, not when a finding or determination is made that the subcontractor incurred the indebtedness. Accordingly, the original subcontractor assumes and becomes liable for the indebtedness incurred by the subcontractor when the labor is performed." *Buenaventura v. Champion Drywall, Inc.*, No. 2:10-CV-00377-LDG-RJJ, 2011 WL 1070749, at *2 (D. Nev. Mar. 21, 2011).

. . .

"It is well settled in Nevada that words in a statute should be given their plain meaning unless this violates the spirit of the act." *McKay v. Bd. of Supervisors*, 703 P.2d 438, 441 (Nev. 1986). NRS 608.150 is silent as to liability in alter-ego scenarios. However, the statute's plain language unambiguously states that "every original contractor . . . shall assume and is liable for the indebtedness for labor incurred by any subcontractor . . . by or for the original contractor in performing any labor, construction or other work . . . ." NRS 608.150(1). The statute further states that a party may bring a civil action against any contractor "for the amount of all wages and damage that may be owing or have accrued as a result of the failure of any subcontractor acting under the original contractor . . . ." NRS 608.150(3).

Continuing on the assumption that GQC is an alter-ego of JLW, GQC was obligated to pay trust contributions based on the hours its employees performed subcontracted work for SMC. Applying the plain meaning of NRS 608.150, SMC, as the general contractor, assumed and was liable for the employee contributions for labor that GQC, as its subcontractor, incurred for the labor that GQC's employees performed for SMC.

Moreover, the Nevada Legislature enacted NRS 608.150 to protect workers from nonpayment of wages and benefits. *U.S. Design & Constr. Corp. v. Int'l Bhd. of Elec. Workers*, 50 P.3d 170, 172 (Nev. 2002). NRS 608.150 reflects "a desire to expand the options available to workers for recovering unpaid wages, not to narrow those options." *Id.* (citation omitted). "The legislature intended to protect the laborer as to *every element* of his compensation, whether that compensation be an hourly wage, or whether it be an hourly wage plus *other benefits*." *Tobler & Oliver Const. Co.*, 442 P.2d at 907 (emphasis added). As plaintiffs are protecting an element of the employees' compensation in accordance with the statute, their claims stands squarely within the intended reach of NRS 608.150.

Thus, the court finds that applying contractor liability under NRS 608.150 to debts created pursuant to the agreements of a subcontractor's alter-ego is consistent with the statute's plain meaning and legislative purpose.

. . .

. . .

James C. Mahan
U.S. District Judge

- 7 -

C. *Standing*

Defendants argue that plaintiffs lack standing because plaintiffs have no relationship with GQC's employees. In response, plaintiffs argue that they are bringing the action on their own behalf and not in a representative capacity.

Standing is an essential and unchanging part of the case-or-controversy requirement of Article III of the United States Constitution. *Allen v. Wright*, 468 U.S. 737, 751 (1984). Over the years, Supreme Court decisions have illuminated the fact that the irreducible constitutional minimum of standing contains three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (alterations in original) (citations and internal quotations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id*.

Defendants argue that no injury exists and plaintiffs' damages are hypothetical. They acknowledge that if GQC were a signatory that failed to make the requisite contributions, then an actual injury and causal link would exist. Defendants argue, without elaborating, that since this is not the scenario, plaintiffs lack standing.

In response, plaintiffs argue that the trusts have suffered harm and that Congress granted them standing to sue in their own name under 29 U.S.C. § 1001, *et seq*. In support, plaintiffs contend that Nevada recognizes that a contractor, as a surety, is bound as an original promisor and, as such, plaintiffs may seek recovery against a contractor together with its subcontractor.

As NRS 608.150 holds a general contractor liable to the same extent as its subcontractor for labor "indebtedness," it follows that plaintiffs have suffered a monetary injury arising from the unpaid contributions. *See, e.g.*, *Singleton v. Wulff*, 428 U.S. 106, 112–13 (1976) (finding that respondent-

physicians suffered a "concrete injury" after being denied compensation). Thus, plaintiffs have adequately pled and supported an injury-in-fact.

Taking plaintiffs' alter-ego allegations as true, the injury is "directly traceable" to SMC, as NRS 608.150 essentially places SMC in the shoes of its subcontractor, GQC. As plaintiffs seek to recover unpaid contributions, a judicial decision in their favor would remedy their injury. Accordingly, the court finds that plaintiffs have standing. *See, e.g.*, *Trs. of Bricklayers & Allied Craftsmen Local No. 3 Health & Welfare Trust v. Reynolds Elec. & Eng'g Co.*, 747 F. Supp. 606, 609 (D. Nev. 1990) (Union's trustees brought state court action against prime contractor); *U.S. Design & Constr. Corp. v. Int'l Bhd. of Elec. Workers*, 50 P.3d 170, 171-72 (2002) (Local union and union trustees brought action against general contractor)

    D.    *Ex post facto clause*

Defendants argue that applying NRS 608.150 in alter-ego cases constitutes an ex post facto application of the law because the result would be punitive, not compensatory. Defendants' ex post facto argument is without merit. "[E]x post facto laws relate to penal and criminal proceedings which impose punishments or forfeitures, and not to civil proceedings which affect private rights retrospectively." *Watson v. Mercer*, 33 U.S. 88, 110 (1834); *see* U.S. Const. Art. I, § 10. Defendants fail to cite to any authority that contradicts this long-standing doctrine.

    E.    *Contract clause*

Defendants argue that applying NRS 608.150 in alter-ego cases is a violation of the contract clause. The court determines whether a regulation violates the contract clause though a three-step inquiry:

> The threshold inquiry is whether the state law has, in fact, operated as a substantial impairment of a contractual relationship. If this threshold inquiry is met, the court must inquire whether the State, in justification, [has] a significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem, to guarantee that the State is exercising its police power, rather than providing a benefit to special interests. Finally, the court must inquire whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption.

*RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004) (alterations in original) (citations and internal quotations omitted). "The threshold inquiry . . . itself has three components . . . . The first sub-inquiry is whether there was a contractual agreement regarding the specific . . . terms allegedly at issue." *Id*. (citations and internal quotations omitted).

In *RUI One Corp.*, the court held that RUI's claim failed at this initial phase of the analysis on the basis that "no specific provision of the lease agreement addresse[d] payment to or employment benefits for RUI's employees." *Id*. Likewise, here, SMC fails to identify any contractual provision with which NRS 608.150 interferes. Thus, defendants' argument is without merit and the court need not address whether there was substantial impairment. *See Gen. Motors Corp. v. Romein*, 503 U.S. 181, 187–88 (1992).

F.    *Due process*

Defendants argue that NRS 608.150, if applied in alter-ego cases, violates a general contractor's substantive due process rights. Defendants' argument is based entirely on the assumption that applying NRS 608.150 in this case would constitute a retroactive requirement that they pay for a debt created years after the labor was performed.

The court disagrees. Enacted in 1931, NRS 608.150 existed at all times relevant to the instant case and, as such, does not retroactively apply liability. Any liability SMC may owe pursuant to NRS 608.150 arose when the relevant labor was performed, and existed independent from the court's recognition of the debt. *See Buenaventura*, 2011 WL 1070749 at *3.

G.    *Void for vagueness*

Defendants argue that NRS 608.150 is unconstitutionally vague. The court disagrees. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972); *see also Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972). The language of NRS 608.150 is clear and absolute, leaving no doubt as to the extent of the indebtedness for which a general contractor may be held liable. *See, e.g., Tobler & Oliver Constr. Co.,* 442 P.2d at 907 ("NRS 608.150 is explicit and mandatory and needs no further explanation."); *Lemus*, 2007 WL 2669772 at *2 ("[NRS 608.150] clearly states that contractors

**James C. Mahan**
**U.S. District Judge**

assume all liability for their subcontractors.").

## IV. Conclusion

For the foregoing reasons, the court finds that summary judgment is not appropriate. Thus, defendants' motion for summary judgment will be denied.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion for summary judgment (doc. # 385) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiffs' motion for leave to file a sur reply (doc. # 394) is DENIED as moot.

DATED August 15, 2014.

_____
UNITED STATES DISTRICT JUDGE